UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOS. 1:18-cr-409 |
| | ) | 1:21-cv-1120 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| TYLER MATTHEW D'JUAN HALL, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the *pro se* motion of defendant Tyler Matthew D'Juan Hall ("Hall") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 65 (Motion); Doc. No. 65-1 (Memorandum in Support); Doc. No. 73 (Amendment to Motion); Doc. No. 75 (Supplement).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 71 (Response); Doc. No. 76 (Supplemental Response), and Hall has filed a reply (Doc. No. 79.) For the reasons set forth herein, the motion to vacate, as amended, is DENIED.

## I.   BACKGROUND

On October 11, 2018, a superseding indictment issued charging Hall with the following: five counts of distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); six counts of possession with intent to distribute a controlled substance, under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)/or (b)(1)(D); two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(A)(i). (Doc. No. 14.)

Hall proceeded to trial in January 2019 and was represented by court-appointed counsel. During the trial, the government produced substantial evidence regarding Hall's suspected drug trafficking activities, including the results of two controlled buys involving Hall in June and July 2018. The jury also heard testimony and saw evidence relating to three searches conducted by police, two involving Hall's residence and place of business occurring on July 3, 2018 (the day after the last controlled buy) and a third search of a different residence associated with Hall that took place on July 19, 2018. All three searches yielded drugs and other evidence of drug trafficking, and the searches on July 3, 2018, also revealed two loaded 9-millimeter semiautomatic pistols. The first pistol was located in a black bag outside the back door of Hall's business, and the second pistol was discovered in a bedroom on a desk that was used to package drugs where it was immediately accessible.[1] At the conclusion of the four-day jury trial, the jury returned guilty verdicts against Hall on all charges. (Doc. No. 33 (Jury Verdicts).)

Prior to sentencing, a final presentence investigation report ("PSR") was prepared. (Doc. No. 38.) Based upon the record and information contained in the PSR, the Court agreed with the calculations set forth in the PSR, including that Hall qualified as a career offender because he had three prior qualifying state court convictions: 2009 and 2012 convictions for drug trafficking and a 2015 conviction for aggravated robbery. (*Id*. ¶¶ 39, 86.) Thus, for Counts 1 through 10, and 12 through 14, and because Hall qualified as a career offender, Hall's total offense level was 34, and with a criminal history category of VI, yielded a guideline advisory range of 262 to 327 months. (*Id*. ¶¶ 59, 86.) Adding the statutory mandatory minimum 60-month sentence for Count 11 (the §

---

[1] Because Hall refused to stipulate to his prior felony offenses for purposes of the charged § 922(g)(1) offenses, the government also introduced evidence relating to Hall's prior convictions in 2015 for robbery, aggravated robbery, and having a weapon under a disability.

924(c) offense for Possession of a Firearm in Furtherance of a Drug Trafficking Crime), the resulting advisory guideline range became 322 to 387 months. But because Hall was found to be a career offender and was convicted of violating § 924(c), pursuant to USSG §4B1.1(c)(2), his guideline range was determined under §4B1.1(c)(2) of the guidelines which provided that Hall's guideline range shall be the greater of (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by 18 U.S.C. § 924(c) to the minimum and the maximum of the otherwise applicable guideline range determined for the counts of conviction other than the 18 U.S.C. § 924(c) count (that is, the 322 to 387 guideline range); and (B) the guideline range determined using the table in subsection (c)(3) (which in this case resulted in an advisory guideline range of 360 months to life imprisonment). (*Id*. ¶ 86.)

On August 30, 2019, the Court sentenced Hall to an aggregate sentence of 444 months imprisonment. (Doc. No 49 (Judgment); Minutes of Proceedings [non-document], 8/30/2019.) In arriving at its sentence, the Court accepted, without objection from counsel, the applicable guidelines sentencing range provided in the PSR, which included the career offender enhancement. It also considered the applicable sentencing factors set forth in 18 U.S.C. § 3553(a), and highlighted Hall's extensive criminal record, which included numerous very serious drug trafficking and weapons offenses, as well as a conviction for intimidating a crime victim or witness. The Court found that, at 29 years old, Hall's extensive record was alarming. In imposing sentence, the Court further stressed the dangerousness of Hall's drug trafficking activities, noting that his sale of fentanyl, in particular, resulted in three nonfatal overdoses. The Court also found aggravating that Hall was a recidivist drug trafficker, who possessed firearms (in this case, semiautomatic firearms) and who conceded that he sold drugs not because he is a drug user, but because he likes the money. Yet another further aggravating factor for Hall was that he had a

record of repeatedly engaging in drug activity while on bond in prior cases, and in the underlying case as well, despite knowing that he was under investigation. (Doc. No. 59 (Sentencing Transcript), at 35–40[2].)

Hall took a direct appeal, in which he challenged the legal sufficiency of the evidence and the propriety of the sentence. In a decision dated October 6, 2020, the Sixth Circuit rejected these arguments and affirmed this Court's judgment. (Doc. No. 63.) With respect to the sentencing argument, the court of appeals found that this Court "appropriately deemed Hall to be a career offender[,]" and properly sentenced Hall within the applicable corresponding advisory sentencing guidelines range. (*Id*. at 18.)

Even though it was raised for the first time in his reply brief and deemed waived, the Sixth Circuit also commented on Hall's argument that his convictions for felon in possession were infirm—in light of the Supreme Court's subsequent ruling in *Rehaif v. United States*, 139 S. Ct. 2191, 204 L. Ed. 2d 594 (2019)—because the government failed to prove that he was aware that he was prohibited from possessing the guns. Specifically, the Sixth Circuit observed:

> [i]n any event, despite the district court's jury instructions that now would be considered improper, it is clear that the jury based its verdict on the § 922(g) counts of the superseding indictment on evidence indicating that Hall was aware that he was not allowed to be in possession of a firearm. When attempting to prove that Hall previously had been convicted of a felony, the government elicited the testimony of Hall's parole officer, who explained that one of Hall's prior convictions was for a 2015 case in which Hall was charged with robbery, aggravated robbery, and *having weapons while under a disability*. Therefore, the jury was aware that Hall knew in 2018 that he was not permitted to possess a firearm.

(*Id*. at 14 (emphasis in original).) Further, the Sixth Circuit noted that Hall's "sentence was not

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

increased due to the § 922(g) convictions" because this Court "ordered the 120-month sentences for [these counts] to run concurrently with the 360-month sentences imposed for the drug-distribution offenses and the possession-with-intent to deliver offenses." (*Id*. at n.3.)

On June 2, 2021, Hall filed the present motion to vacate. He raised eight grounds for relief in his motion and supplemented his third ground in an amendment filed on July 21, 2022. (*See* Doc. No. 73.) All of his grounds sounded in ineffective assistance of counsel. Given certain formatting issues associated with Hall's original motion, the government only responded to three of the grounds. (*See* Doc. No. 71.) The Court subsequently directed the government to address the remaining claims, including the amendment contained in Hall's initial supplement. (Order [non-document], 11/16/2022; *see* Doc. No. 73), and Hall was subsequently permitted to file a reply. (*See* Doc. No. 79.) The motion is now ripe for resolution.

## II.   STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted

5

only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not especially onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). However, a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine*, 488 F.3d at 334

6

(finding that the burden is met where the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id*. (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail below, Hall has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, many of the arguments offered by Hall in support of the present motion are either contradicted by the record or are adverted to in a perfunctory and conclusory manner, preventing further review by this Court.

## III. DISCUSSION

Hall attempts to ground his claims in the Sixth Amendment right to effective assistance of counsel. "To prevail on an ineffective-assistance-of-counsel claim, [Hall] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, Hall must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see also Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland*

7

prongs in any order and need not address both prongs if Hall "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 955 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Judicial scrutiny of counsel's performance must be highly deferential[.]" *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won.") (citing *Strickland, supra*.)

### A. Failure to Investigate (Ground One)

In his first claim, Hall alleges that "[c]ounsel failed to investigate, [and] interview and call relevant defense witnesses at trial." (Doc. No. 65, at 4.) He insists that there are "witnesses that spent a lot of time with" him who would have testified that "they never saw [him] in the possession of a firearm," and that they saw other people who had criminal records "frequent the relevant location where the firearms were seized." (Doc. No. 65-1, at 5.)

Defense counsel has a duty to conduct reasonable investigations or make a reasonable decision that investigations are unnecessary. *See Sims v. Livesay*, 970 F.2d 1575, 1580–81 (6th

Cir. 1992) (citing *Strickland*, 466 U.S. at 691). "While the temptation to rely on hindsight is particularly strong in the context of ineffective assistance claims based on counsel's failure to investigate, the court must conclude that counsel's strategic choices made after less than complete investigation are not constitutionally deficient if a reasonable professional judgment supports the limitations on investigation." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001) (citing *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)).

Two of the potential witnesses Hall identifies were Shandrea Hall, his mother, and D'aisa Guy, his sister. (*See* Doc. Nos. 65-3 (Affidavit of Shandrea Hall) and 65-4 (Affidavit of D'aisa Guy).) Ms. Hall's affidavit, which is substantially similar to that of Ms. Guy, provides, in relevant part:

> I know that in 2018, Tyler was working at an auto repair shop on 3179 West 104 in Cleveland, Ohio. When I visited the shop, I witnessed a lot of people and so-called thugs in and around the shop. I spent a lot of time with Tyler around the time he got arrested. I never did witness Tyler possess or carry a firearm or ammunition. I would have testified to the foregoing facts if called to testify at his trial.

(Doc. No. 65-3, at 2) (numerals and spaces omitted). Neither potential witness averred that she ever came forward or offered herself as a witness for Hall. (*See* Doc. Nos. 65–3, 65–4.)

The proposed testimony of these women would not likely have been admissible at trial. The weapons charges all related to Hall's unlawful possession of firearms and/or ammunition on July 3, 2018. (*See* Doc. No. 14, at 4, 5.) That these witnesses may have seen Hall on unspecified dates not identified in the indictment does not make it any less likely that Hall committed the charged offenses on July 3, 2018. Similarly, evidence that Hall often did not possess weapons

would not have been admissible to show his propensity not to carry weapons.[3] *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (It is well established that "prior 'good acts' generally may not be used to show a predisposition not to commit crimes" and so are not admissible.)

Hall's former counsel, Attorney Michael J. O'Shea ("Attorney O'Shea"), also provided an affidavit. (Doc. No. 71-1 (Affidavit of Michael J. O'Shea).) In his affidavit, Attorney O'Shea averred that he was never made aware that Ms. Hall or Ms. Guy might have any relevant testimony to offer at trial. (*Id.* ¶¶ 5, 6, 7.) Neither Ms. Hall nor Ms. Guy averred to the contrary. Additionally, while he was aware of Andrea Nurse—another individual mentioned in Hall's motion—Attorney O'Shea indicated that evidence he reviewed in preparation for the trial suggested that Ms. Nurse might have been involved in some illegal activities with Hall. (*Id.* ¶ 5(C).) Accordingly, Attorney O'Shea believed it would not be wise to call Ms. Nurse as a witness. (*Id.*)

Rather, Attorney O'Shea's trial strategy focused on issues relating to possession and discrediting the government's key witness:

> I believed that given the extremely strong and large amount of evidence that the Government had against Tyler Hall, that the only good faith defense I could mount was to argue the issues associated with constructive possession (of the guns and drugs), the lack of proof of "furtherance" of the drug sales with the guns, lack of fingerprint corroboration on the guns, and Mr. [Francis] Barrett's overall credibility and bias.

(*Id.* ¶ 8.)

Counsel's decision to forego calling witnesses who either could have offered little to no relevant and admissible testimony, or might have actually implicated Hall in wrongdoing, and focus on "more promising avenues of investigation" was a reasonable one. *See Goldsby v. United*

---

[3] Additionally, it is undisputed that the pistol that was recovered at Hall's shop was located in a black bag near the back door of the establishment. Neither woman mentioned a black bag in their affidavit, nor otherwise indicated that they looked inside it.

*States*, 152 F. App'x 431, 436 (6th Cir. 2005) (finding no ineffective assistance of counsel where defense counsel elected not to call a witness who would have likely supported the government's theory that the drugs belonged to the defendant). "Given the deferential standard applied to counsel's decisions, [Hall's counsel's] failure to investigate and call [certain witnesses] was not objectively unreasonable." *Id.*

In addition, Hall cannot meet the second prong because he has failed to demonstrate that the alleged testimony from his named and unnamed possible witnesses would have changed the outcome of the trial. *See id.* ("Even if counsel's performance was deficient, relief will not be granted unless petitioner was actually prejudiced." (citing *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005))). As previously discussed, calling his relatives or individuals who may have shared in his drug trafficking activities would not have brought Hall any closer to casting doubt over the substantial evidence presented by the government at trial.

Hall's first ground for relief is denied.

### B.  Failure to Request a Drug Addict Instruction (Ground Two)

In his second ground for relief, Hall argues that his counsel was constitutionally deficient for failing to request a drug addict instruction for one of the government's key witnesses, Francis Barrett. (Doc. No. 65-1.) He claims that the omission prejudiced him because the jury was "never specifically advised how to process this questionable testimony, particularly because he was the only person to allege he saw Mr. Hall possess and distribute controlled substances." (*Id.* at 6.)

There is no "*per se* rule" requiring the instruction whenever an addict-informant testifies at trial. *See* Sixth Circuit Pattern Instructions § 7.06B, Committee Commentary (citing *United States v. Anderson*, 166 F.3d 1215 (Table), 1998 WL 833701 (6th Cir. 1998)). Rather, the Sixth Circuit has repeatedly held that such an instruction is not necessary where "the jury was aware of

11

the witness's addiction, the witness's testimony was corroborated, and a cautionary instruction was given." *See id.* (citing *Anderson*, at *4–5*); *see also United States v. Lopez*, 182 F.3d 919 (Table), 1999 WL 397947, at *4 (6th Cir. 1999) (no error to omit an addict-informant instruction where the district court gave a general witness credibility instruction and cautioned the jury to carefully consider a witness's own interests in testifying).

    For example, in *United States v. Brown*, 946 F.2d 1191, 1195 (6th Cir. 1991), a case cited by Hall, the Sixth Circuit found that an addict-informant instruction was not necessary because the district court's instructions, taken together, "adequately submitted the issues and applicable law to the jury." Specifically, the district court gave a general credibility instruction and also instructed the jury on the various ways in which a witness may be impeached, including with prior crimes of dishonesty. *Id*. The Sixth Circuit found that these instructions were sufficient, especially given that the jury was apprised of the witness's status as both an informant and a drug addict, and the witness's testimony was corroborated by other evidence at trial. *Id*.; *see, e.g., United States v. McGhee*, 882 F.2d 1095, 1100 (6th Cir. 1989).

    Like the district court in *Brown*, this Court equipped the jury with the instructions necessary to properly evaluate Mr. Barrett's testimony. In addition to giving a general credibility instruction, the Court gave a paid informant instruction, advising them that they should use more caution when considering Barrett's testimony, due to the possibility that his testimony could be influenced by what the government gave him. (Doc. No. 58 (Trial Transcript), at 48–49.) Further, the jury heard testimony regarding not only Barrett's status as a paid informant, but also his history of drug addiction. (Doc. No. 56 (Trial Transcript), at 124, 153–54.) Barrett's testimony regarding his drug

transactions with Hall was also corroborated by other evidence at trial.[4] Under these circumstances, an addict-informant instruction was unnecessary.

Given that the Court did not err in omitting an addict-informant instruction, counsel cannot be considered ineffective for failing to request one. This claim is denied.

### C.  Failure to Raise *Rehaif* Issue Regarding § 924 Crime (Ground Three)

Citing the Supreme Court's decision in *Rehaif v. United States*—decided June 21, 2019— Hall argues that defense counsel was ineffective for failing to challenge the indictment and jury instructions as they related to his felon-in-possession charges under 18 U.S.C. § 922(g). (Doc. No. 65-1, at 6.) In *Rehaif*, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both the defendant knew that he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. While previously the law provided that the government need only prove that a defendant knowingly possessed a firearm after having been convicted of a felony, *Rehaif* clarified that a felon-in-possession charge requires the government to prove that the defendant "*knew he was a felon when he possessed the firearm.*" *Greer v. United States*, 141 S. Ct. 2090, 2095, 210 L. Ed. 2d 121 (2021) (emphasis in original).

Both the indictment and the Court's instructions to the jury were written prior to the Supreme Court's decision in *Rehaif*, and, therefore, did not contain this *mens rea* requirement for felon-in-possession offenses. Under these circumstances, the Court cannot find defense counsel ineffective for failing to anticipate this change in the law. *Nichols v. United States*, 563 F.3d 240,

---

[4] At trial, Agent Klamert testified that investigators took steps to corroborate Barrett's reports regarding the controlled buys by conducting moving surveillance of the meet locations, with searches of Barrett's person before and after each buy, and with audio and video recordings of the two transactions. (Doc. No. 55 (Trial Transcript), at 77–88.) This testimony was in addition to other substantial evidence offered at trial tying Hall to drug trafficking.

253 (6th Cir. 2009) (counsel is generally not constitutionally ineffective for failing to foresee a legal clarification); *Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010) (counsel was not ineffective for failing to anticipate development in the law); *see, e.g., Neel v. United States*, No. 3:14-cr-88, 2021 WL 590840, at *4 (E.D. Tenn. Dec. 14, 2021) (trial counsel was not ineffective for failing to anticipate *Rehaif*).

And even if the Court were to fault counsel for failing to raise the *Rehaif* issue at sentencing or at any time before he filed a reply brief on direct appeal, Hall's § 2255 claim would still fail because he cannot establish that the error prejudiced him. As the Supreme Court has recognized in the wake of *Rehaif*, "demonstrating prejudice [for a *Rehaif* error] will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons." *Greer*, 141 S. Ct. at 2097–98 (noting that "felony status is simply not the kind of thing that one forgets" (quotation marks and citations omitted)). So the government typically will not face much difficulty proving *Rehaif's* knowledge element. *See Rehaif*, 139 S. Ct. at 2198. "Indeed, defendants commonly stipulate at trial to their status as felons so that the jury does not learn easy-to-prove (yet highly prejudicial) evidence about their past crimes." *Wallace v. United States*, 43 F.4th 595, 603 (6th Cir. 2022) (citing *Old Chief v. United States*, 519 U.S. 172, 180–92, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)).

Hall did not stipulate to his prior felony convictions, which required the government to offer proof to meet this element of the crime. As a result, the government offered, and the Court properly admitted, the judgments in Hall's underlying felonies, which showed that Hall had been convicted of numerous crimes described as third or fourth-degree felonies, and even that he had

14

received a two-year sentence for one.[5] (Doc. No. 57 (Trial Transcript), at 19–20; Gov. Ex. 407.) These prior felony convictions constitute "substantial proof" that Hall knew he was a felon. *See Greer*, 141 S. Ct. at 2097–98; *Hobgood v. United States*, Nos. 4:20-cv-1, 4:17-cr-15, 2020 WL 2601653, at *3 (E.D. Tenn. May 21, 2020) (petitioner's *Rehaif* claim was without merit in light of his extensive criminal history). Moreover, one of Hall's prior felony convictions was for having a weapon while under a disability, making it clear to the jury that Hall had knowledge that his status as a felon precluded him from possessing firearms. *See Neely v. United States*, No. 20-5985, 2021 WL 3878715, at *4 (6th Cir. Feb. 24, 2021) ("Where a defendant has a prior conviction for possessing a firearm as a convicted felon, the defendant has the knowledge required by *Rehaif*." (citations omitted)).

Given Hall's extensive criminal history, including his felony conviction for possession of a firearm under a disability, the Court has no doubt that the jury would have easily found that Hall knew on July 3, 2018, that he was a convicted felon. (Doc. No. 63, at 14 (noting defendant's felony criminal record, and highlighting his felony conviction for possession of a firearm under a disability, the Sixth Circuit concluded that Hall "knew in 2018 that he was not permitted to possess a firearm"). It would not have mattered if counsel had raised the *Rehaif* issue at any time during the trial or appellate process; the result would have been same. Because Hall cannot meet the

---

[5] It is also undisputed that Hall served the sentence imposed for that crime, lending further support for a finding that he was aware that he was a convicted felon. *United States v. Hobbs*, 953 F.3d 853, 858 (6th Cir. 2020) ("Hobbs had previously been convicted of aggravated robbery in Ohio and had *served* six years in prison for that offense. No reasonable juror could have believed that he did not know he had 'been convicted . . . of[] a crime punishable by imprisonment for a term exceeding one year.'" (quoting 18 U.S.C. § 922(g)(1)) (emphasis in original).

prejudice prong of the *Strickland* analysis, he is not entitled to relief on his third ground.[6]

### D. Failing to Object to Prosecutor's Remarks (Ground Four)[7]

Ground Four of Hall's motion alleges that trial counsel was ineffective for his failure to object to the government's remarks in opening statements wherein the Assistant United States Attorney ("AUSA") stated, "[m]embers of the jury, the defendant is a drug trafficker." (Doc. No. 65-1, at 8 (quoting Doc. No. 55, at 16).) He also complains that, in closing arguments, the AUSA stated that Hall is "a drug trafficker who uses guns to protect his supply . . . ." (*Id*. at 9 (quoting Doc. No. 58, at 60).) Hall claims that these statements, along with other comments about the evidence in the case relating to Hall's charged trafficking activities, prejudiced him "because the prosecutors expressed their personal opinions about Mr. Hall's guilt during opening as well as closing arguments." (*Id*.) According to Hall, his counsel's failure to object to these remarks constituted ineffectiveness and deprived him of a fair trial. (*Id*.)

In order to prevail on his ineffective assistance of counsel claim raised in Ground Four, Hall must first prove that the AUSA's statements constitute prosecutorial misconduct or objectionable statements. He has failed to do so. To establish a prosecutorial misconduct claim, a two-prong test applies. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). The Court must

---

[6] Hall recently supplemented his third ground by offering the citation to *Conley v. United States*, No. 20-3887 (6th Cir. Feb. 11, 2022). (*See* Doc. No. 75 (Supplement).) The panel decision in *Conley* does not advance Hall's claim. There, the Sixth Circuit remanded for the district court to consider in the first instance whether the defendant could make out a *Rehaif* claim after the district court erroneously found that *Rehaif* did not apply retroactively to motions brought on collateral review—an issue not in dispute here. In so ruling, the Sixth Circuit underscored that *Conley* had previously been sentenced to community control, leaving the possibility of doubt as to whether he actually knew his crimes were punishable by more than a year in prison. *Id*. But the court expressly distinguished cases like the present one, noting that it had "denied similar claims on the basis that the defendant could not show prejudice because the record clearly established the requisite knowledge of the prior felony conviction." *Id*. The ruling in this unreported decision does not change the Court's analysis or the result.

[7] While this claim is identified in the memorandum in support of the motion as "No. 5", it is identified in the motion, itself, as the fourth ground for relief. (*Compare* Doc. No. 65, at 8 with Doc. No. 65-1, at 8–9.) Consistent with the motion, the Court will treat this claim as Ground Four.

first consider whether the statements at issue were improper. *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009). If the statements are found to be improper, the Court determines whether they were flagrant. *Id*.

The first challenged statement by Hall—"Member of the jury, the defendant is a drug trafficker"—was the first sentence in the government's opening statement. (Doc. No. 55, at 16.) This statement was immediately followed by, "And the evidence in this case is going to prove beyond a reasonable doubt that last summer, summer of 2018, the defendant was dealing drugs, heroin, fentanyl, powder cocaine, base cocaine, which is also commonly known as crack cocaine, as well as marijuana." (*Id*.) The balance of the opening statement contained a preview of the evidence the government expected to offer at trial and the verdicts the government planned to request the jury return at the end of the trial. (*Id*. at 16–24.)

It is not improper for a prosecutor, in an opening statement, to preview what he expects the evidence at trial will show. *See United States v. Wells*, 623 F.3d 332, 343 (6th Cir. 2010); *see United States v. McCaskill*, 62 F. App'x 71, 76 (6th Cir. 2003) (finding prosecutor's opening statements proper where the "prosecutor merely summarized what he expected the evidence to show—and, as it turned out, his summary closely foreshadowed the evidence that was in fact presented to the jury"). Similarly, the remark in the government's closing arguments, wherein the government's attorney referred to Hall as a drug dealer who uses firearms to protect his drug supply, was not improper in light of the evidence of drug trafficking and weapons that was produced at trial. *See, e.g., Bonilla v Lafler*, No. 06-15466, 2009 WL 2386080, at *19 (E.D. Mich. July 30, 2009) (prosecutor's characterization of petitioner and his co-defendants as "drug dealers" was not improper in light of the evidence presented at trial).

Because the remarks were not improper, the Court need not proceed to the second step of

17

the test and determine whether any improper remarks were flagrant. And because there was no prosecutorial misconduct, Hall cannot meet either prong of the ineffective assistance of counsel test. Accordingly, Hall's fourth ground is denied.

### E.  Failure to Object to Instructions for § 924(c)(1) Offense (Ground Five)

Count 11 of the superseding indictment charged Hall with the possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A). (Doc. No. 14, at 5–6.) Section 924(c)(1)(A)(i) provides in relevant part that:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years.

The statute "criminalizes two separate and distinct offenses." *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). A defendant can violate the statute either by (1) using or carrying a firearm during and in relation to a drug trafficking crime or (2) possessing a firearm in furtherance of a crime of violence or drug trafficking crime. *Id*. at 931.

In his fifth ground for relief, Hall maintains that his counsel was ineffective for failing to request an "active employment" instruction in connection with this offense. (Doc. No. 65-1, at 7.) He argues that there was no evidence at trial that he "use[d], brandish[ed], display[ed], str[uck] with, fire[d] a firearm, or use[d] ammunition during the alleged drug transaction." (*Id*.) Because there was no evidence he used a weapon to advance a drug transaction, Hall argues he did not actively employ a firearm for the purpose of furthering a drug trafficking crime. (*Id*.)

Hall relies on the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 143, 147, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995). In *Bailey*, the Supreme Court held that a defendant could not be convicted of "using" a firearm unless the government showed "that the defendant

18

actively employed the firearm during and in relation to the predicate crime." *Id*. at 150. However, *Bailey* does not apply to the § 924(c) crime charged in Count 11. "*Bailey* examined an earlier version of [§ 924(c)] that prohibited *only* 'using or carrying a firearm during and in relation to' drug trafficking." *Combs*, 369 F.3d at 931–32 (citing 18 U.S.C. § 924(c)(1) (1994) (emphasis added)). In 1988, Congress amended the statute in direct response to *Bailey*, adding the possession "in furtherance of" provision. *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001). It was this provision, not the "use and carry" provision, under which Hall was charged in Count 11. (Doc. No. 14, at 5–6.)

In *Mackey*, the Sixth Circuit interpreted the "in furtherance of" provision to mean that "the weapon must promote or facilitate the crime." 265 F.3d at 460–61. To prove that a defendant is guilty of a violation of the "in furtherance of" provision, the government does not need to establish that the defendant actively deployed a firearm, as was required under *Bailey's* interpretation of the original "use and carry" provision. Rather, the court in *Mackey* explained that "[i]n order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Mackay*, 265 F.3d at 462. "Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id*. (citation omitted).

The Court instructed the jury on the charge in Count 11 in accordance with the Sixth Circuit pattern instruction for the crime of possessing a firearm in furtherance of a crime of violence or drug trafficking crime. *See* Sixth Circuit Pattern Instruction § 12.03. Tracking the pattern instruction, the Court advised the jury that they must find three elements beyond a reasonable

19

doubt: (1) Hall committed a drug trafficking crime, (2) Hall knowingly possessed a firearm, and (3) the possession of the firearm was "in furtherance of" one or more of the charged drug trafficking crimes. (Doc. No. 58, at 45.) The Court further instructed the jury, again in accordance with the pattern, that the term "in furtherance of" means:

> that the firearm was possessed to advance or promote one or more of the crimes charged in [the superseding indictment]. In deciding whether the firearm was possessed to advance or promote the [drug trafficking crime], you may consider these factors: One, whether the firearm was strategically located so that it was quickly and easily available for use. Two, whether the firearm was loaded. Three, the type of weapon. Four, whether possession of the firearm was legal. Five, the type of drug trafficking crime. Six, the time and circumstances under which the firearm was found. This list is not exhaustive.

(*Id*. at 45–46.); *see* Sixth Circuit Pattern Instruction § 12.03 Firearms—Possessing a Firearm in Furtherance of a Crime of Violence or Drug Trafficking Crime.

Because Hall was charged under the "in furtherance of" provision of § 924(c)(1)(A), and the Court properly instructed the jury regarding that provision, counsel cannot be considered ineffective for failing to request an instruction that would only have been appropriate if he had been charged under the "use and carry" provision. *See* Sixth Circuit Pattern Instruction § 12.02 Firearms—Using or Carrying a Firearm During and in Relation to a Crime of Violence or Drug Trafficking Crime (explaining that "use" involves the "active employment" of the firearm). Hall's fifth ground for relief is denied.

### F. Cumulative Error (Ground Six) and Appellate Counsel (Ground Seven)

In the sixth ground for relief, Hall maintains that the cumulative effect of his trial counsel's ineffectiveness, as set forth in the first five grounds for relief herein, resulted in a fundamental miscarriage of justice. (Doc. No. 65-1, at 9–10.) In his seventh ground, Hall argues that appellate counsel was ineffective for failing to raise the errors alleged in Grounds One through Six. (*Id*. at

10.) These derivative claims fail because, for the reasons set forth above, trial counsel did not render ineffective assistance. *See United States v. Ledbetter*, 929 F.3d 338, 365 (6th Cir. 2019) ("the 'accumulation of non-errors' does not amount to reversible cumulative error" (quoting *United States v. Underwood*, 859 F.3d 386, 394 (6th Cir. 2017))); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit"); *see also Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010) (counsel was not ineffective for failing to raise patently frivolous arguments). The sixth and seventh grounds for relief are denied.

### G.  Failure to Challenge Predicate Offenses (Ground Eight)

On direct appeal, the Sixth Circuit determined that Hall was properly classified as a career offender under the federal sentencing guidelines. (Doc. No. 63, at 18 [issued October 6, 2020].) Now, in Hall's eighth ground for collateral relief, he argues that counsel was ineffective for not arguing that one of the statutes under which he was previously convicted of drug trafficking in state court—Ohio Rev. Code § 2925.03(A)(1)—is too broad to categorially qualify as a predicate for imposing career offender enhancement under U.S.S.G. § 4B1.1. (Doc. No. 65-1, at 11.) In his amendment, he expands that argument to also claim that his prior state court conviction for aggravated robbery does not qualify under the sentencing guidelines for career offender enhancement. (Doc. No. 73, at 1.)

In support, Hall relies on post-sentencing case law from the Supreme Court and the Sixth Circuit addressing sentencing enhancements under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and U.S.S.G. § 4B1.1, including *Borden v. United States*, 141 S. Ct. 1817, 1834, 210 L. Ed. 2d 63 (2021) (plurality of the court finding that a criminal statute requiring only a mens rea of recklessness or less does not qualify as a "violent felony" under ACCA's elements clause);

21

*United States v. White*, 58 F.4th 889, 899 (6th Cir. 2023) (applying *Borden* and holding Ohio's aggravated robbery statute no longer qualifies under the elements clause of the ACCA because the use of a weapon in furtherance contains no mens rea); and *United States v. Alston*, 976 F.3d 727, 728 (6th Cir. 2020) (finding that Ohio Rev. Code § 2925.03(A)(1) does not qualify under § 4B1.1 as a predicate offense because it incorporates offers to sell controlled substances). In particular, Hall argues that, in the wake of the rulings in *Alston* and *White*, his convictions for drug trafficking and aggravated robbery can no longer be treated as predicate offenses under the guidelines. (Doc. No. 65-1, at 11; Doc. No. 80, at 1.).

There is no dispute that the case law in this area has recently been rapidly evolving and changing. This fact is fatal to Hall's argument because he is before the Court on collateral review and his final ground for relief is presented in the context of an ineffective assistance of counsel claim. Trial counsel did not have the benefit of either *Alston* or *White* at the time of sentencing. Indeed, prior to *White*, binding Sixth Circuit precedent provided that Ohio's aggravated robbery statute qualified as a crime of violence under the elements clause. *See United States v. Raymore*, 965 F.3d 475, 490–91 (6th Cir. 2020) (quoting *United States v. Patterson*, 853 F.3d 298, 303 (6th Cir. 2017)). Counsel "is not ineffective for failing to predict developments in the law." *Bullard v. United States*, 937 F.3d 654, 661 (6th Cir. 2019); *see, e.g., Thompson*, 598 F.3d at 288 (finding counsel not ineffective for failing to anticipate development in the law); *see also Malone v. United States*, 817 F. App'x 188, 191 (6th Cir. 2020) (holding that "[f]ailing to raise an argument that is contradicted by existing precedent is not constitutionally defective, unless a change in the law was clearly foreshadowed" (citations, quotation marks, and alterations omitted)); *Nichols v. United States*, 563 F.3d 240, 253 (6th Cir. 2009) (en banc) (holding counsel is generally not "constitutionally ineffective for failing to anticipate or foresee" a legal clarification). Because Hall

22

cannot establish that counsel's performance was deficient, his ineffective assistance claim with respect to this issue fails for this reason alone. *See Wingate*, 965 F.3d at 955 (the court need not address both prongs of the *Strickland* standard if the defendant makes an insufficient showing on one).

Yet, even if the Court reached the second prong of the *Strickland* standard, Hall's claim would still fall short. A defendant is a career offender under the guidelines if he: (1) was at least 18 years old at the time of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a).

As previously noted, the Court relied upon three predicate state court convictions in imposing a career offender enhancement under the guidelines—convictions in 2009 and 2012 for drug trafficking and a 2015 conviction for aggravated robbery. The drug trafficking convictions were based on Ohio Rev. Code § 2925.03 and the aggravated robbery conviction was premised on Ohio Rev. Code § 2911.01. The Court agrees with Hall that the 2012 drug trafficking conviction no longer qualifies as a predicate for career enhancement under the guidelines. Nevertheless, the Court finds that the 2009 drug trafficking conviction still qualifies as a controlled substance offense for purposes of the career offender guidelines. Additionally, the Court believes that Hall's 2015 aggravated robbery conviction would still qualify as a predicate offense. Even if Hall could establish the first prong of the *Strickland* ineffectiveness test, therefore, his claim would still fail because he can show no prejudice as he still has two qualifying predicate offenses.

The Court begins by considering Hall's prior drug trafficking convictions. The term

"controlled substance offense" is defined in § 4B1.2(b) of the guidelines.[8] In 2019, the Sixth Circuit ruled that attempted crimes do not fit within the definition of "controlled substance offense" in § 4B1.2(b). *See United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019); *see also United States v. Cavazos*, 950 F.3d 329, 336 (6th Cir. 2020) (holding that "an offer to sell is properly considered an attempt to transfer a controlled substance," meaning that a conviction for offering to sell a controlled substance is not a "controlled substance offense").

The statute under which Hall was twice convicted of drug trafficking—Ohio Rev. Code § 2925.03—is divisible, meaning that the two subsections set forth separate crimes. *United States v. Duffy*, 821 F. App'x 483, 486 (6th Cir. 2020) (citing *United States v. Wright*, 43 F. App'x 848, 852 (6th Cir. 2022)). Subsection (A)(1) makes it a crime to "[s]ell or *offer to sell* a controlled substance or a controlled substance analog;" while subsection (A)(2) prohibits the preparation for shipment, shipment, transport, delivery, preparation for distribution, or distribution of a controlled substance or a controlled substance analog. Ohio Rev. Code § 2925.03(A) (emphasis added).

In light of *Havis* and its progeny, the Sixth Circuit has determined that, because subsection (A)(1) of Ohio Rev. Code § 2952.03 encompasses offers to sell, subsection (A)(1) is not categorically a controlled substance offense and cannot be counted toward the predicate offenses necessary for career offender enhancement under § 4B1.1. *Alston*, 976 F.3d at 728. However, the Sixth Circuit has also determined that subsection (A)(2) is categorically a controlled substances offense that supports the career offender enhancement. *United States v. Smith*, 960 F.3d 883, 888 (6th Cir. 2020); *see United States v. McIntosh*, 858 F. App'x 884, 887 (6th Cir. 2021); *United*

---

[8] Specifically, a "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

24

*States v. Smith*, 812 F. App'x 357, 358 (6th Cir. 2020).

The pivotal question then is whether Hall's state drug trafficking convictions were under subsection (A)(1) or (A)(2). The indictment returned in Hall's 2009 drug trafficking conviction charged that "the defendant prepared for distribution or distributed more than 5 grams but less than 10 grams of cocaine." (Doc. No. 51 (Final PSR) ¶ 46.) Similarly, the online public docket[9] reflects that defendant entered "A PLEA OF GUILTY TO TRAFFICKING OFFENSES 2925.03 A(2) F3." [10] The Court finds that the 2009 drug trafficking conviction was under Ohio Rev. Code § 2925.03(A)(2) and qualifies as a predicate controlled substance offense under U.S.S.G. § 4B1.1. In contrast, the state court docket in Hall's 2012 drug trafficking convictions shows that Hall entered "A PLEA OF GUILTY TO TRAFFICKING OFFENSE 2925.03 A(1) F4." Accordingly, the Court finds that the 2012 drug trafficking conviction, under Ohio Rev. Code § 2925.02(A)(1), does not qualify as a predicate offense for career enhancement under the guidelines.

Next, the Court considers Hall's 2015 conviction for aggravated robbery under Ohio Rev. Code § 2911.01(A)(1). In that case, the indictment charged that "the defendant had a firearm on his person and either displayed the weapon, indicated he possessed it, or used it in attempting to commit a theft offense against" his victims. (Doc. No. 51 ¶ 55.) Additionally, the docket shows that Hall entered "A PLEA OF GUILTY TO AGGRAVATED ROBBERY 2911.01 A(1) F3."

The government maintains that Hall's prior aggravated robbery conviction still qualifies as a crime of violence under the enumerated-offenses clause. (Doc. No. 81, at 2 (citing U.S.S.G. §

---

[9] The state court's docket is available at: https://cpdocket.cp.cuyahogacounty.us/ (last visited August 7, 2023).

[10] These docket records qualify as "*Shepard* documents" that a court may consider when analyzing a predicate crime. *United States v. Hennessee*, 932 F.3d 437, 442 (6th Cir. 2019) (explaining that "*Shepard*-approved documents" include any "charging document, written plea agreement, transcript of plea colloquy, jury instructions, judgment of conviction, or other record of comparable findings of fact adopted by the defendant upon entering a guilty plea").

4B1.2(a)(2)). The government argues that, because the guidelines specifically identify the crimes of "robbery" and "extortion" as crimes of violence, Hall's aggravated robbery conviction satisfies this clause. (*Id*.) *See* U.S.S.G. § 4B1.2(a)(2) (specifically listing "robbery" and "extortion" as crimes of violence).

The law has evolved quickly in this area and has continued to do so even after briefing on the present motion was complete. On June 2, 2023, the Sixth Circuit ruled that Ohio's robbery statute, Ohio Rev. Code § 2911.02, qualified as a crime of violence under the enumerated offenses clause. *United States v. Carter*, 69 F.4th 361, 365 (6th Cir. 2023). Noting that the guidelines did not define generic "robbery," the Sixth Circuit observed that determining whether Ohio's robbery statute criminalized conduct beyond that set forth in generic "robbery" would require it to "mull through a host of robbery laws, decide which of their various elements should be included in a 'generic' definition of robbery, and then analyze all the hypothetical ways a defendant could violate that generic offense." *Id*. at 363 (citation omitted). Finding a "simpler way" to resolve the case, and noting that the guidelines specifically defined "extortion," the court considered whether Ohio's robbery statute categorically matches the guidelines definition for extortion. *Id*.[11] After reviewing the elements for Ohio robbery, and comparing them to the elements contained in the guidelines' definition for extortion, the court concluded that "the elements of Ohio robbery are 'the same as, or narrower than, the Guidelines' elements of extortion." *Id*. at 365 (citation omitted).

In light of the analysis set forth in *Carter*, the Court believes that § 2911.01(A)(1) would still qualify as a crime of violence for purposes of career offender enhancement under the

---

[11] The court observed that the guidelines define "extortion [as] 'obtaining something of value from another' by wrongfully using 'force, fear of physical injury, or threat of physical injury.'" *Id*. (quoting U.S.S.G. § 4B1.2 cmt. n.1 (alterations supply by the Sixth Circuit)).

guidelines as the statute does not criminalize more conduct than that which is proscribed by the guidelines' definition of extortion. Because the Court finds that two prior offenses still fall safely within the guidelines' contours, Hall has two prior convictions that qualify under § 4B1.1.[12] Thus, even if Hall could establish that his counsel was ineffective for failing to anticipate the change in the law, he cannot establish prejudice because there remain two predicate offenses that support his career offender enhancement. Ground Eight, therefore, fails for this additional reason.

## IV.  CONCLUSION

For the foregoing reasons, Hall's motion, as amended, to vacate, set aside, or correct his sentence is denied. Further, for all of the same reasons, the Court finds that "reasonable jurists" would not debate the Court's denial of Hall's motion to vacate. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: August 9, 2023

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**

---

[12] In fact, Hall's criminal history would yield a third qualifying conviction. The same journal entry that recorded Hall's 2015 aggravated robbery conviction reflects that Hall was also convicted of robbery under Ohio Rev. Code § 2911.02(A). (State court docket at https://cpdocket.cp-cuyahogacounty.us/ (last visited August 7, 2023)); *see id.*, Journal Entry, filed 03/03/2016).); (*See* Doc. No. 45 ¶ 55). The defendant in *Carter* was convicted under § 2911.02(A)(2), while Hall pled guilty to robbery under § 2911.01(A)(3). (*See id.*)  Section 2911.02(A)(2) requires that the perpetrator "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another[,]" (A)(3)'s physical harm element requires that the perpetrator "[u]se or threaten the immediate use of force against another." In *Carter*, the court held that § 2911.02(A)(2) mirrored the guidelines' definition of extortion because it likewise required "force, fear of physical injury or threat of physical injury." *Carter*, 69 F.4th at 364. Here, (A)(3) clearly requires the use of "*force* against another" also in line with the guidelines' definition of extortion. The ruling in *Carter* would, therefore, apply equally to robbery convictions under § 2911.02(A)(3).